Nicholas Lylo, Petitioner *v.* Commonwealth of Pennsylvania, Department of Environmental Resources, Respondent.

Argued May 2, 1984, before Judges ROGERS, CRAIG and COLINS, sitting as a panel of three.

*William A. Hebe, Spencer, Gleason & Hebe,* for petitioner.

*Arthur M. Feld,* Assistant Counsel, for respondent.

OPINION BY JUDGE ROGERS, June 6, 1984:

Nicholas Lylo seeks review of an order of the Pennsylvania Civil Service Commission (Commission) dismissing his appeal from suspension, effective May 14, 1982, and subsequent removal, effective October 25, 1982, from his position as Forester IV, regular status, by the Pennsylvania Department of Environmental Resources (DER).

On May 14, 1982, Lylo was orally suspended without pay from his position with the classified service because of criminal charges filed against him. By letter dated May 20, 1982, DER confirmed the oral suspension giving as its reason "that charges of criminal activity involving the performance of your duties as a Forester have been filed against you by the State Attorney General." The letter further stated that because Section 803 of the Civil Service Act (Act)[1] requires that the suspension not exceed thirty days, "[i]f no determination is made on the criminal proceedings against you during that thirty (30) day peri-

---

[1] Act of August 5, 1941, P.L. 752, *as amended,* 71 P.S. §741.803.

od, you will be discharged as of the close of business June 25, 1982.'' Lylo's criminal case was delayed beyond the thirty day period and by letter dated June 25, 1982 he was discharged from his position because "on May 14, 1982 you were arrested on charges of criminal activity involving the performance of your duties as a Forester.'' The discharge letter informed Lylo that his removal would be reconsidered after the final disposition of the criminal proceedings.

On October 1, 1982, Lylo was arraigned on forty counts of criminal conduct involving his duties as a forester. He was accepted into the Accelerated Rehabilitative Disposition (ARD) program[2] and was, *inter alia,* placed on probation for twenty-four months. Although acceptance into the ARD program involves no finding of guilt and provides for a dismissal of all charges upon a successful completion of the program, DER informed Lylo by letter dated October 25, 1982 of its decision to reaffirm his removal based upon eight incidents revealed by its own investigation which were particularly described and which included unauthorized removal of Bureau of Forestry logs, submitting fictitious bid proposals and directing that false insurance claims be made.

Lylo appealed the initial suspension and the two removal actions, dated June 25, 1982 and October 25, 1982, respectively, to the Commission. The Commission upheld the suspension and the second removal action of October 25, 1982 after sustaining seven of the eight counts enumerated in DER's October 25, 1982 termination letter. It concluded, however, that DER's June 25, 1982 letter did not constitute sufficient notice of removal because it did not state with sufficient specificity the reasons for termination as required by

---

[2] *See* Pa. R. Crim. P. 175-185.

Section 950 of the Act, 71 P.S. §741.950[3] and 4 Pa. Code §105.3(a).[4] The Commission further concluded that mere arrest did not in this case constitute just cause for Lylo's removal under Section 807 of the Act, 71 P.S. §741.807 and ordered that Lylo be reimbursed for loss of wages and emoluments from June 26, 1982 (end of suspension) through October 25, 1982 (date of effective removal).

Lylo appealed the Commission's order; DER did not.

We must affirm the order of the Commission unless we find that it violated Lylo's constitutional rights, was not in accordance with law or that necessary findings of fact were unsupported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704.

Lylo first challenges his suspension, effective May 14, 1982, on two grounds: that he was not given notice and an opportunity to be heard and was therefore deprived of his constitutional right to due process and that good cause did not exist for the suspension.

Section 803 of the Act, 71 P.S. §741.803 provides that an appointing authority "may for good cause suspend without pay for disciplinary purposes an employe holding a position in the classified service. . . . What shall constitute good cause for suspension may

---

[3] Section 950 of the Act provides that "[e]very person in the classified service shall be furnished with written notice of any personnel action taken with respect to him pursuant to the provisions of this act. . . . The notice shall in the case of the permanent separation, suspension for cause, or demotion of a regular employe set forth the reason or reasons for the action."

[4] 4 Pa. Code §105.3(a) provides that "[t]he notice of removal, resignation by abandonment, involuntary retirement, involuntary demotion, or suspension which is issued to regular employees shall include a clear statement of the reasons therefor, sufficient to apprise the employe of the grounds upon which the charges are based."

be stated in the rules." The rules, found at 4 Pa. Code §101.21(a) provide:

(a) Good cause for suspension shall be a just cause, such as:

(1) insubordination;

(2) habitual lateness in reporting for work;

(3) misconduct amounting to violation of law, rules or lawful and reasonable departmental orders;

(4) intoxication while on duty;

(5) scandalous or disgraceful conduct . while on or off duty which may bring the service of the Commonwealth into disrepute; or

(6) similar substantial reasons.

Additionally, the Governor's Code of Conduct for Appointed Officials and State Employes provides relevantly at 4 Pa. Code §7.173:

As soon as practicable after an employe has been *formally charged with criminal conduct related to his employment with the Commonwealth* or which constitutes a felony, such employe shall be suspended without pay. (Emphasis added.)

The Commission found that Lylo was suspended for good cause within the meaning of the Act because "some of the charges lodged against [Lylo] bore directly upon his performance of his employment duties. . . ." We agree, in that he was suspended for activities which at the least constitute "misconduct amounting to violation of law, rules or lawful and reasonable departmental orders" and "scandalous or disgraceful conduct while on or off duty which may bring the service of the Commonwealth into disrepute." 4 Pa. Code §101.21(a)(3) and (5).

We have upheld suspensions upon arrest in several recent cases. In *Salvati v. Department of Public Welfare,* 76 Pa. Commonwealth Ct. 248, A.2d (1984), we held that, while not deciding whether an arrest *per se* is good cause, an appointing authority may properly consider the fact of arrest in determining whether good cause exists for a disciplinary action. There, we affirmed the Commission's conclusion that the petitioner's arrest for possession and sale of controlled substances was good cause for suspension because it tended to bring the Commonwealth into disrepute. 4 Pa. Code §101.21(a)(5). In *Brown v. Pennsylvania Department of Transportation,* 34 Pa. Commonwealth Ct. 461, 383 A.2d 978 (1978), we upheld the suspension and termination of an employee of the Department of Transportation who was arrested on criminal charges relating to his employment duties. Here, the Commission's finding that some of the crimes with which Lylo was charged related directly to the performance of his duties as a forester fully supports its conclusion that good cause existed for his May 14, 1982 suspension.

Lylo's second challenge to his suspension, that it was imposed without a prior hearing and therefore denied him his due process rights, is contrary to the law of this Commonwealth and, as such, is devoid of merit. *Gorby v. Pennsylvania Department of Public Welfare,* 57 Pa. Commonwealth Ct. 312, 426 A.2d 223 (1981); *Williams v. Pennsylvania Civil Service Commission,* 9 Pa. Commonwealth Ct. 437, 306 A.2d 419 (1973). The various agencies of the state government do not have to hold a hearing before suspending an employee. Due process is served when the employee is given notice of the charges against him and a full opportunity to appeal the agency action to the Commission.

Lylo next alleges that the Commission erred as a matter of law by concluding that DER's removal action of October 25, 1982 was effective. He asserts that insofar as the October 25, 1982 letter only "reaffirmed" DER's prior act of removal on June 25, 1982, which prior act the Commission concluded was ineffective and unlawful, the removal action of October 25, 1982 was therefore a legal nullity. He cites no authority for this thesis and we know of none. The Commission, in our view, properly held DER's June 25, 1982 removal action to be ineffective because it did not adequately advise Lylo of the reasons for his discharge as required by Section 950 of the Act and the rules promulgated thereunder at 4 Pa. Code §105.3(a), and we find no error in its conclusion that the arrest, even though for charges relating directly to Lylo's employment duties, did not in this case constitute just cause for dismissal within the meaning of the law which provides at Section 807 of the Act, 71 P.S. §741.-807 that "[n]o regular employe in the classified service shall be removed except for just cause." The October 25, 1982 removal letter, however, despite its language of reaffirmation, met all of the requirements of a termination under the Act and served as a separate and distinct act of termination which set forth numerous substantive reasons for the action, which were supported by the evidence. We have held that the removal of a classified service employee need not be supported by the same level of proof as is required in a criminal action. *Hughes v. Pennsylvania Civil Service Commission*, 17 Pa. Commonwealth Ct. 344, 331 A.2d 590 (1975).

Pursuant to Section 803 of the Act, the Commission properly concluded that Lylo's suspension expired after thirty days; that DER's June 25, 1982 removal action was ineffective; and that Lylo was entitled as

108

matter of law to a reimbursement for all lost wages and emoluments from June 26, 1982 (end of suspension) through October 25, 1982 (date of effective removal).

Order affirmed.

ORDER

AND Now, this 6th day of June, 1984, the order of the Pennsylvania State Civil Service Commission in the above-captioned matter is affirmed.